**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PETER FISCINA,                                          :
                                                        :     04 Civ. 7720 (RMB)(KNF)
                                    Plaintiff,           :
                                                        :     **DECISION AND ORDER**
                      -against-                          :
                                                        :
NEW YORK CITY DISTRICT COUNCIL OF                       :
CARPENTERS, et. al.,                                    :
                                                        :
                                    Defendants.          :
-------------------------------------------------------------X


**I.      Introduction**

        On or about September 14, 2004, Peter Fiscina ("Fiscina" or "Plaintiff") filed an amended

complaint ("Amended Complaint") against New York District Council of Carpenters ("District

Council"), the New York District Council of Carpenters Pension Plan ("Pension Plan"), and the

New York District Council of Carpenters Benefit Funds ("Benefit Funds") (collectively,

"Defendants") seeking "[i]njunctive and declaratory relief, monetary damages and other appropriate

legal and equitable relief . . . pursuant to the American[s] with Disabilities Act of 1990 [42 U.S.C.

§§ 12101 et. seq.  ("ADA")], New York Executive Law § 296 [("NYSHRL")] and New York City

Administrative Code § 8-107 [("NYCHRL")]" and the Employment Retirement Security Act of

1974 ("ERISA") 29 U.S.C. §§ 1001 et. seq. (Amended Complaint ¶ 2.) [1]  Plaintiff claims, among

other things, that "Defendants had no authority pursuant to the Plan, ERISA or other applicable law

to forfeit Plaintiff's accumulated Vesting Credits."  (Amended Complaint at ¶ 73.)

        On or about May 5, 2005, Plaintiff moved for summary judgment ("Plaintiff's

Memorandum") arguing that: (1) "the Defendants failed to properly follow and administer Plan

---

[1] The Amended Complaint also named thirteen individual defendants who, by stipulation dated
December 8, 2004, have been dropped from the case.

Rules" with respect to the denial of Plaintiff's application for a pension, (Plaintiff's Memorandum at 4); (2) Plaintiff is "entitled to receive a medical grace period," (id. at 6, 12); (3) federal and state "anti-discrimination laws prohibit forfeiture of vesting credits while a plan participant is disabled," (id. at 24); (4) "Defendants' retention of employer contributions amount to unjust enrichment," (id. at 18); and (5) the "Defendants' actions regarding the denial of a medical grace period has effected 22,000 Plan participants," and, therefore, "class certification" is proper. (Id. at 21.) On or about June 7, 2005, Defendants opposed Plaintiff's motion for summary judgment, cross-moved for summary judgment, and moved to amend their answer ("Defendants' Memorandum"), arguing that "the Trustees' decision . . . applying and interpreting Plan provisions . . . was not arbitrary and capricious in that it is within reason and supported by substantial evidence," (id. at 7), and that "leave to amend [Defendants'] answer to assert affirmative defenses that [Plaintiff's] claims are time-barred" should be granted. (Id. at 22.) On or about June 20, 2005, Plaintiff filed a reply memorandum of law ("Plaintiff's Reply") and on or about June 27, 2005, Defendants filed a reply memorandum of law ("Defendants' Reply").[2]

**For the reasons stated herein, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.**

## II.      Background

The following facts are undisputed unless otherwise noted.

### The Pension Plan

"The Pension Plan is administered in accordance with a Plan document [("Plan Document")], which contains all the rules relating to eligibility, calculations of benefits, and types of pensions, among other provisions.  The Plan document has been amended approximately 20 times since 1967."  (Declaration of Robert B. Ward, Pension Fund manager New York City District

---

[2] By letter dated October 24, 2005, the parties waived oral argument.

Council Carpenters Benefit Funds ("Ward Declaration"), dated June 6, 2005.) The Plan Document defines "Covered Employment" which is "any employment for which an Employer is obligated by an Agreement to contribute to the Fund" and "Vesting Credit" which is "earned for work in Covered Employment." (See Plan Document effective January 1, 1999 as amended through July 1, 2001 ("January 1, 1999 Plan Document"), Exhibit A to Defendants' Memorandum; Plan Document effective July 1, 1976 ("July 1, 1976 Plan Document"), Exhibit M to Defendants' Memorandum.)

The current version of the Pension Plan is reflected in the January 1, 1999 Plan Document, (Defendants' Rule 56.1 Statement dated June 6, 2005 ("Defendants' 56.1 Statement"), ¶ 3), which, as relevant here, provides that a Pension Plan participant ("Participant") will lose credit for "Breaks-in-Service" and describes two types of Breaks-in-Service: (i) the "One-Year Break-in-Service" which happens "in any Calendar Year in which [a Participant] fails to receive at least one-quarter Current Vesting Credit," (id. § 3.3(a)(2)); and (ii) the "Permanent Break-in-Service" which occurs when a Participant "has earned 5 or fewer Vesting Credits and has five consecutive One-Year Breaks-in-Service, or [the Participant] has earned 6 or more Vesting Credits and has a number of consecutive One-Year Breaks-in-Service that equals or exceeds the number of Vesting Credits with which he had been credited." (Id. § 3.3(b).) "A One-Year Break-in-Service is repairable, in the sense that its effects are eliminated if, before incurring a Permanent Break-in-Service . . . the Employee works in Covered Employment for at least 870 Hours of Service within any two Consecutive Years." (Id. § 3.3(a)(4).)

The July 1, 1976 Plan Document differentiated between Breaks-in-Service that occurred before January 1, 1976 and those that occurred on or after January 1, 1976. (July 1, 1976 Plan Document, Art. 15, 16.) Participants who incurred Breaks-in-Service prior to 1976 were covered by a four-year medical grace period, i.e. a Break-in-Service would not have the effect of forfeiting the Participant's Vesting Credits ("Medical Grace Period"). (Id. § 16.03.) There is no Medical Grace

Period in the July 1, 1976 Plan Document (or in any subsequent Plan Document) relating to Breaks-in-Service occurring on or after January 1, 1976. (See July 1, 1976 Plan Document, Art. 15; Defendants' Memorandum at 9-10.) Defendants contend that "the medical (and disability) grace provisions of the Plan were eliminated by the Plan that became effective July 1, 1976," and that "the disability grace [period] only applied, by its terms . . . to 'Breaks in Service Prior to 1976.'" (Defendants' Memorandum at 8-9.)

"In 2001 the Trustees of the Pension Plan considered instituting a plan improvement to reinstate the medical grace periods retroactive to 1976 . . . ." (Defendants' Memorandum at 4.) Defendants' actuary, the Segal Company, "estimated that the additional liability of [this] improvement[ ] would be approximately $262 million, . . . . After detailed discussion, . . . the Trustees rejected [this] proposed improvement [ ] because of cost." (Report of the Segal Company, dated May 16, 2001, Exhibit P to Defendants' Memorandum.)[3]

**Plaintiff's Work History**

Plaintiff became a member of the District Council and a Participant in the Pension Plan in 1967. (Plaintiff's Statement of Facts dated May 4, 2005 ("Plaintiff's 56.1 Statement"), ¶¶ 1-2.) Plaintiff "worked in covered employment from 1967 to 1973 during which time he was credited with 7.00 Vesting Credits." (Plaintiff's 56.1 Statement ¶ 3; see also Defendants' 56.1 Statement ¶ 14.) Plaintiff was injured in 1974 and "did not return to covered employment until 1985." (Plaintiff's 56.1 Statement ¶ 6; Defendants' 56.1 Statement ¶ 14.) In 1985, after returning to work, Plaintiff earned 1/4 Vesting Credit for Covered Employment. (Defendants' 56.1 Statement ¶ 14.) Plaintiff earned 3.25 Vesting Credits between 1986 and 1989. (Defendants' 56.1 Statement ¶ 14; see also Plaintiff's 56.1 Statement ¶ 7.)

---

[3] Plaintiff's argument, in summary, is that he was unfairly denied the benefits of a Medical Grace Period. He contends, because he incurred Breaks-in-Service for disabilities, his Vesting Credits should not have been forfeited.

In June 1988, Plaintiff requested an update (status report) regarding his pension. (Defendants' 56.1 Statement ¶ 19.)  In a letter dated July 11, 1988, Daniel Geisser, Department Head of the Benefits Fund, informed Plaintiff that "[o]ur records indicate that you permanently lost 7.00 Pension Credits when you incurred a Permanent Break-in-Service by not earning at least 1/4 Pension Credit during the period January 1, 1974 through December 31, 1980."  (Letter from Daniel Geisser, Department Head, New York District Council Benefit Funds to Plaintiff dated July 11, 1988 ("July 11, 1988 Letter"), Exhibit F to Defendants' Memorandum of Law at 1.)  The July 11, 1988 Letter also informed Plaintiff that he (again) "became a participant on 7/1/86 and ha[d] earned 2.25 Current Pension Credits [as of the date of the July 11, 1988 Letter.]"  (Id.)

Plaintiff continued working and "became temporarily disabled in 1989 due to a job-related injury."  (Plaintiff's 56.1 Statement ¶ 8.)  Plaintiff did not return to Covered Employment until 1998.  (Plaintiff's 56.1 Statement ¶ 10; Defendants' 56.1 Statement ¶ 18.)  In March 1993, Plaintiff requested another update regarding his pension.   In a letter dated March 23, 1993, Robert B. Ward, Supervisor of the Benefit Funds, informed Plaintiff that "[o]ur records indicate that you permanently lost 7.00 Pension Credits when you incurred a Permanent Break-in-Service by not earning at least 1/4 Pension Credit during the period July 1, 1976 through December 31, 1982.  You again became a participant and had earned 3.75 Current Pension Credits . . . . Our records indicate that you temporarily lost 3.75 Pension credits when you incurred a One-Year Break-in-Service in 1990.  This credit can be restored if, before incurring a Permanent Break in Services, you earn 870 hours in Covered Employment during a two consecutive calendar year period by December 31, 1994."  (Letter from Robert B. Ward, Supervisor, New York District Council Benefit Funds to

Plaintiff dated March 23, 1993 ("March 23, 1993 Letter"), Exhibit J to Defendants' Memorandum of Law at 1-2.)[4]

Plaintiff returned to Covered Employment in 1998 and earned 4.25 Vesting Credits between 1998 and 2002. (Plaintiff's 56.1 Statement ¶ 12; Defendants' 56.1 Statement ¶ 14.) On or about April 22, 2003, at the age of fifty-five, Plaintiff submitted an application for a regular pension. (Plaintiff's 56.1 Statement ¶ 13.) In a letter dated May 2, 2003, Robert B. Ward, Pension Fund Manager, of the Benefit Funds informed Plaintiff that "[o]ur records indicate that you permanently lost 7.00 Vesting Credits when you incurred a Permanent Break-in-Service by not earning at least 1/4 Vesting Credits during the period 1974 through December 31, 1980. You again returned to Covered Employment and had earned 3.75 Vesting Credits. These credits were permanently lost when you again incurred a Permanent Break-in-Service during the period 1990 through December 1994. You again returned to Covered Employment and have earned 4.25 Vesting Credits." (Letter from Robert B. Ward, Pension Fund Manager, New York District Council Benefit Funds to Plaintiff dated March 23, 1993 ("May 2, 2003 Letter"), Exhibit H to Defendants' Memorandum of Law at 1-2.) In short, Plaintiff "**was advised by Pension Fund manager Robert B. Ward that he did not qualify for the requested Regular Retirement Pension before age 65 because he only had 4.25 Vesting Credits and in order to qualify for a regular Retirement Pension before the age of 65 a participant requires at least 15 Vesting Credits**." (Defendants' 56.1 Statement ¶ 23; see May 2, 2003 Letter at 1-2 (emphasis added).)

On or about July 2, 2003, Plaintiff, through counsel, submitted an Appeal of Trustees' Decision Denying Pension Benefits to Peter Fiscina ("Plaintiff's July 2, 2003 Appeal") in which he

---

[4] Both the July 11, 1988 Letter and the March 23, 1993 Letter stated, following the signature line, that "the quotations in this letter are only estimates based on unsubstantiated stamp hours . . . and information you supplied. The receipt of Pension benefits is subject to all the rules and regulations of the Plan at the time your application is submitted, subject to audit of your stamp redemptions, verification by the fund's consultants and approval by the Board of Trustees." (July 11, 1988 Letter; March 23, 1993 Letter.)

argued that "he was entitled to keep all 15.00 Vesting Credits pursuant to the Rules of the [Pension Plan] and applicable laws, that he is entitled to receive additional pension credits covering the periods that he was disabled and that he is entitled to receive a Regular Retirement Pension before age 65." (Plaintiff's July 2, 2003 Appeal at 1.) On or about September 19, 2003, the Trustees' Appeals Committee responded to Plaintiff's July 2, 2003 Appeal, stating "[o]n September 9, 2003 the [Trustee's] Appeals Committee considered [Plaintiff's] claim for a Regular Pension. After careful consideration, the Committee denied the appeal." (Decision of Pension Appeals Committee to Thomas Gambino, counsel for Plaintiff, dated September 19, 2003 ("Decision of Pension Appeals Committee"), Exhibit M to Defendants' Memorandum, at 1.) The Decision of Pension Appeals Committee explained that "there is no provision in the Plan to waive the Break-in-Service Rule after 1975 because of disability. As a result of the parity Break-in-Service Rule, Mr. Fiscina lost 10.75 Vesting Credits. Since he had only 4.25 Vesting Credits remaining he did not qualify for a Regular Pension which requires 15 Vesting Credits." (Id.)[5]

### III.   Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material issue of fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether summary judgment is warranted, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002).

---

[5]  The "Rule of Parity" provides that "if the length of the break exceeds the length of years of pre-break service, a fund is not obligated to include such pre-break service in the computation of benefits." Veltri v. Bldg Serv. 32B-J Pension Fund, No. 02 Civ. 4200, 2003 WL 22705124, at *5 n.18 (S.D.N.Y. Nov. 17, 2003); see also infra pp. 13-16.

When cross-motions for summary judgment are made, the standard is the same as that for individual motions.  See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001); Cejaj v. Bldg. Serv. 32B-J Health Fund, No. 02 Civ. 6141, 2004 WL 414834, at *6 (S.D.N.Y. Mar. 5, 2004). The court must consider each motion independently of the other.  Morales, 249 F.3d at 121.

"Where . . . a pension plan confers discretion on its administrators to determine plan eligibility and benefits, we review a decision of the administrators under the arbitrary and capricious standard."  Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798, 170 F.3d 162, 166 (2d Cir. 1999) (citing Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)).

**IV.  Analysis**

> **1.  Denial of Pension Rights**

Plaintiff acknowledges that "this court 'may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'  Plaintiff . . . has satisfied this standard and shown Defendants to have acted arbitrarily and capriciously." (Plaintiff's Reply at 1 (quoting Pagan, 52 F.3d at 442).)  Plaintiff also argues that: (1) the July 11, 1988 and March 23, 1993 Letters "are apparent 'rubber stamps' without indicating the Trustees decision making process, Plan rules relied upon and the reason why the Trustees opined that vesting credits were lost,"  (Plaintiff's Reply at 2); (2) that the final note "contained at the end of both [the July 11, 1988 and March 23, 1993 Letters] stress to Plaintiff that the quotations are only estimates," (id. at 3); (3) Plaintiff was "not provided with an opportunity to appeal the decisions of the Trustees contained in either letter . . . . Such inability to verify a participant's vesting credits and the lack of concurrent appeals process to challenge Breaks-in-Service . . . can only be viewed as . . . bad faith," (id.); and (4) that the representations contained in the July 11, 1988 and March 23, 1993 Letters "assumes that [the Pension Plan] provisions do not violate ERISA, or any other statute."  (Id.)

Defendants counter that "the Trustee's decisions . . . applying and interpreting Plan provisions relating to Permanent Breaks in Services [were] not arbitrary and capricious in that it is within reason and supported by substantial evidence.  Thus, the decision to deny Mr. Fiscina a pension must be upheld, even if the Court were considering the issue anew and even if Mr. Fiscina and the Trustees offered rational but conflicting interpretations of Plan provisions."  (Defendants' Memorandum at 7.)   Defendants also argue that: (1) "the [July 11, 1988 and March 23, 1993 Letters] contain substantial information as to Plan provisions underlying the decisions and go through the analysis resulting in the forfeiture in the credits;" (2) "whether these letters sufficiently advised of the reasoning underlying the decisions does not detract one iota from the fact that plaintiff was advised of the Permanent Break-in-Service provisions;" (3) that the July 11, 1988 and March 23, 1993 Letters are a "warning – and invitation – to participants.  A warning in the sense that the information in the letter is based upon information . . . reported to the Fund . . . . An invitation in the sense that it implicitly invites the participant to bring any discrepancies to the attention of the Plan;" and (4) "[t]o the extent that changes were made by the Trustees . . ., assuring compliance with ERISA, changes in eligibility provisions, changes in break in service rules, among other numerous changes that were made, . . . were all consistent with the Trustees' powers and authority under the Plan and ERISA."  (Defendants' Reply at 3-4.)

"Under the arbitrary and capricious standard, the decision of a claim Administrator shall not be overturned unless it is found to be (1) without reason; (2) unsupported by substantial evidence; or (3) erroneous as a matter of law."  Rudolph v. Joint Industry Bd. of Elec. Indus.,  137 F. Supp. 2d 291, 299 (S.D.N.Y. 2001) (citing O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995)).

The July 11, 1988 Letter outlined (in detail) the method the Pension Plan utilized to calculate Plaintiff's pension status as of that date.  It included the relevant excerpts from the (then

current) Plan Document that concerned One-Year and Permanent Breaks-in-Service and informed Plaintiff that the Pension Plan "records reflect that [he] permanently lost 7.00 pension Credits" between January 1, 1974 and December 31, 1980 "by not earning at least 1/4 Pension Credit."  (July 11, 1988 Letter at 1.)  Plaintiff was advised that if he "ha[d] any further questions regarding this matter . . . do not hesitate to contact the Pension Fund."  (July 11, 1988 Letter at 2.)

The March 23, 1993 Letter also outlined the method the Pension Plan utilized to calculate Plaintiff's pension status as of that date.  It included the relevant portions of the Plan Document that discussed Breaks-in-Service, and informed Plaintiff that in addition to having "permanently lost 7.00 Pension Credits when [he] incurred a Permanent Break in Service," he had "temporarily lost [an additional] 3.75 Pension Credits" between 1989 and the date of the letter by incurring "a One Year Break-in-Service in 1990."  (March 23, 1993 Letter at 1.)  Further, Plaintiff was instructed as to how to "restore" the 3.75 credits, "before incurring a Permanent Break in Service," namely by "earn[ing] 870 hours in Covered Employment during a consecutive calendar year period."  (Id. at 2.)

The May 2, 2003 Letter explained to Plaintiff that he lost seven credits when he incurred his first Permanent Break-in-Service "by not earning at least 1/4 Vesting Credits during the period 1974 through December 31, 1980;" that he subsequently rejoined the Pension Plan, and earned and then lost an additional 3.75 credits by incurring a second Permanent Break-in-Service  "during the period 1990 through 1994."  (May 2, 2003 Letter at 1.)  The May 2, 2003 Letter also explained that Plaintiff had 4.25 credits, earned after he returned to Covered Employment, and informed him that "[i]n order to qualify for a Regular Retirement Pension before age 65 a Participant must have at least 15 Vesting Credits.  The reason you do not qualify is that you have only 4.25 Vesting Credits."  (Id. at 2.)

The Decision of Pension Appeals Committee, dated September 19, 2003, also explained that "there is no provision in the Plan to waive the Break-in-Service Rule," and that Plaintiff "lost 10.75 Vesting Credits. Since he had only 4.25 Vesting Credits remaining he did not qualify for a Regular Pension which requires 15 Vesting Credits." (Decision of Pension Appeals Committee at 1.)

"The [plaintiff] must establish a genuine question of material fact whether the Fund's rejection of his claims was arbitrary and capricious." Jiras, 170 F.3d at 166 (2d Cir. 1999). Plaintiff does not dispute the periods of time during which he was in Covered Employment, or that he failed to earn any Vesting Credits from 1974 to 1985 or (again) from 1989 to 1998. He does not dispute his receipt of the July 11, 1988 Letter, March 23, 1993 Letter, May 2, 2003 Letter, and the Decision of Pension Appeals Committee, or that these documents accurately reflect his absences from Covered Employment. Plaintiff challenges (unpersuasively in the Court's view), the Defendants' analysis of the Pension Plan that his absences from Covered Employment lawfully resulted in two Permanent Breaks-in-Service. "A court should not substitute its own judgment for that of the plan administrator as if the court were considering the issue of eligibility for benefits anew." Gilliam v. Trustees of Sheet Metal Workers, No. 03 Civ. 7421, 2005 WL 1026330, at *3 (S.D.N.Y. May 3, 2005) (citing Pagan 52 F.3d 442). There is no evidence that the Pension Plan did not consistently interpret the Break-in-Service provisions. The Court finds that the Pension Plan's application of the Pension Plan rules with respect to Plaintiff was not "arbitrary and capricious" and that it was reasonable, supported by substantial evidence, and documented in the July 11, 1988 Letter, March 23, 1993 Letter, May 2, 2003 Letter, and the Decision of Pension Appeals Committee. It was not erroneous as a matter of law. (See May 2, 2003 Letter at 1 ("[o]ur records indicate that you permanently lost 7.00 Vesting Credits when you incurred a Permanent Break-in-Service by not earning at least 1/4 Vesting Credits during the period 1974 through December 31, 1980"); Decision of Pension Appeals Committee at 1 ("there is no provision in the Plan to waive the

Break-in-Service Rule after 1975 because of disability")); <u>see also</u> <u>Campanella v. Mason Tenders</u> <u>District Council</u>, 299 F. Supp. 2d. 274, 291 (S.D.N.Y. 2004) (finding plan trustees' interpretation of plan rules "to be entirely reasonable" and denying plaintiffs' request for credit earned prior to break in service); <u>see</u> <u>Pagan</u>, 52 F.3d at 442 (finding that "the decision to deny [plaintiff] long-term disability benefits was neither arbitrary nor capricious" where the pension plan had "rested its decision to deny [plaintiff] long-term benefits under the Pension Plan on [plaintiff's] failure to satisfy the plan's requirement[s]"); <u>Dellacava v. Painters Pension Fund of Westchester and Putnam</u> <u>Counties</u>, 851 F.2d 22, 26 (2d. Cir. 1988) ("we cannot say that the trustees' construction of the break-in-service provisions is in and of itself arbitrary.") <u>see,e.g.</u>, <u>Melvin v. U.A. Local 13 Pension</u>, 131 Fed. Appx. 737 (2d Cir. 2005) (holding that a plan administrator's decision to limit participant's benefits accrued prior to his break-in-service was not arbitrary and capricious.)

## 2. **Elimination of Medical Grace Period Provision**

Plaintiff argues that: (1) "[t]he Plan Rules in effect when Mr. Fiscina first became a Plan participant, . . . expressly allowed for a 'medical grace period'," that "Plaintiff was entitled . . . to have that at least a four-year period of time during the period of his disability . . . disregarded for the purpose of determining whether he incurred a Loss of Service Credit," and that he "did not incur a permanent Break-in-Service during the period from 1978 through December 31, 1984," and that he "did not incur a permanent Break-in-Service from 1990 through 1997," (Plaintiff's Memorandum at 6,8 9-10); (2) that "Defendants acted arbitrarily and capriciously by retroactively applying the [July 1, 1976] Plan Rule amendment by interpreting the Plan Rules' silence on the issue of medical grace periods to mean that Mr. Fiscina was not entitled to received such a grace period during the earlier years," (<u>id.</u> at 9); (3) "that the Plan Rules amendments which sought to change his Vesting Schedule reduced an accrued benefit in violation of ERISA and that he was in fact entitled to 100% nonforfeitability vesting," and that "Defendants' contention that 'medical grace periods' were

eliminated is prohibited pursuant to 29 U.S.C. § 1054 which provision does not allow for the reduction in accrued benefits through Plan amendments." (<u>Id.</u> at 17.)

Defendants respond that: (1) "the medical (and disability) grace provisions of the Plan were eliminated by the Plan that became effective as of July 1, 1976," (Defendants' Memorandum at 9); (2) that "[t]he Trustees' determination that the medical grace provisions did not apply with respect to Mr. Fiscina's pension history from 1967 to 1974 (and that in any event he still would have incurred a Permanent Break-in-Service from 1976 to 1985) is within reason and not arbitrary and capricious," (<u>id.</u> at 9-10); and (3) that despite the general rule against reduced accrued benefits pursuant to 29 U.S.C. § 1054, "the Plan's Permanent Break-in-Service provisions comply with applicable law in accordance with ERISA 'Rule of Parity' exception," which "permits pre-ERISA years of service to be disregarded in applicable circumstances. Such an applicable circumstances exists here." (Defendants' Memorandum at 11-12.)

ERISA generally permits pension plans to be amended so long as amendments do not have the effect of decreasing an "accrued benefit of a participant." 29 U.S.C. § 1054(g) ("[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan"). This means that though a "break in service rule is not, standing alone, arbitrary and capricious," <u>Cawley v. NMU Pension and Welfare Plan</u>, 457 F. Supp. 301, 304 n.8 (S.D.N.Y. 1978), ERISA "does not allow for any break in a participating employee's service to negate previously accrued benefits." <u>McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund</u>, 320 F.3d 151, 157-60 (2d Cir. 2003). However " the applicable 'rule of parity' permits some break-in-service provisions that deal with benefit accrual." <u>Id.</u> at 157, n.4. The Rule of Parity states that "[i]f the length of the break exceeds the length of years of pre-break service, a fund is not obligated to include such pre-break service in the computation of benefits." <u>Veltri</u>, 2003 WL 22705124, at *5 n.18.

Defendants have demonstrated that the amendments in the July 1, 1976 Plan Document which eliminated the Medical Grace Period were not in violation of ERISA because (1) the Pension Plan clearly retains the ability under ERISA § 204, 29 U.S.C. § 1054(g), and the Plan Document, to amend the Pension Plan; and (2) the application of the Breaks-in-Service rules to Plaintiff's work history satisfies the Rule of Parity. See Veltri, 2003 WL 22705124, at * 5 n.18. Plaintiff had seven Vesting Credits, all earned pre-ERISA, when he incurred his first Permanent Break-in-Service. It is undisputed that Plaintiff failed to work in Covered Employment for 11 years, from 1974 to 1985. Because the 11 year Break-in-Service exceeds the number of years of pre-ERISA service (i.e. seven), the Pension Plan was permitted, under the Rule of Parity, to determine that Plaintiff did incur a Permanent Break-in-Service and that his Vesting Credits were lost. See Id.; see also McDonald, 320 F.3d at 160 ("years of service . . . before a break in service shall not be required to be taken into account . . . if the number of consecutive 1-year breaks in service equals or exceeds the aggregate number of such years of service before such break") (quoting ERISA § 202(b)(4)). The Benefits Fund explained that "there is no provision in the Plan to waive the Break-in-Service Rule after 1975 because of disability [i.e. no Medical Grace Period applies]. As a result of the parity Break-in-Service Rule, Mr. Fiscina lost 10.75 Vesting Credits." (Decision of Pension Appeals Committee at 1.)

The Trustee's determination not to grant Plaintiff a Medical Grace Period was not arbitrary and capricious under ERISA or the July 1, 1976 Plan Document. See e.g., Palomino v. Nat'l Maritime Union Pension & Welfare, No. 79 Civ. 464, 1980 WL 2162, at *4 (E.D.N.Y. Sept. 19, 1980) ("Under the Plan's interpretation of the Regulation, it was not arbitrary or capricious to deny plaintiff grace period days."); Cawley, 457 F. Supp. at 304 ("[h]aving examined the detailed affidavit of [the pension plan administrator] and the exhibits attached thereto, we conclude that the Trustees did not act arbitrarily or capriciously in requiring four quarters of employment to cure a

service break.").  It is undisputed that "Mr. Fiscina accrued 7 credits in the pre-ERISA years of 1967 through 1973 and then failed to accrue any credits from 1974 through 1984.  This equates to 7 years of pre-break service followed by an 11 year break."  (Defendants' Memorandum of Law at 13; see also Ward Declaration ¶ 6 ("Mr. Fiscina earned one Vesting Credit each for the years 1967 through 1973 inclusive . . . and then zero reported hours from 1975 through 1984.").)  The Defendants' (correct) interpretation that "there is no provision in the Plan to waive the Break-in-Service Rule after 1975 because of disability," (Decision of Pension Appeals Committee at 1), and their conclusion that Plaintiff lost seven pre-ERISA Vesting Credits in accordance with the Rule of Parity were supported by the evidence, and were not erroneous as a matter of law.  See Campanella, 299 F. Supp. 2d. at 291; Palomino, 1980 WL 2162, at *4.

### 3.   Discrimination Claims

Defendants argue that "Plaintiff's discrimination claims are without merit," and that Plaintiff's ADA claims are barred because "a complainant must first exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC")." (Defendants' Memorandum at 20.)  Plaintiff claims that the ADA, NYSHRL, and NYCHRL "each prohibit a labor organization from discrimination against any of its members due to disability," and that "Defendants have negatively effected Mr. Fiscina's, and other similarly situated Plan participants, . . . by changing vesting schedules and denying them 'medical grace periods' during periods of disability." (Plaintiff's Memorandum at 24.)   Plaintiff also argues that his ADA claim is not barred for failure to file a claim with the Equal Employment Opportunity Commission ("EEOC") because "courts are permitted in certain limited circumstances to equitably toll filing requirements . . . ."  (Plaintiff's Reply at 9.)

Plaintiff presents no legal support for his claim of discrimination under the ADA, the NYSHRL, or the NYCHRL for denial of his pension benefits.  See Potter v. Xerox Corp., 88 F.

Supp. 2d 109, 112 (W.D.N.Y. 2000); see also, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 108

(1983).  "Plaintiff has presented no authority that a mere denial of disability benefits can properly

be construed as a discrimination claim under the ADA, and [the Court is] not persuaded that such a

claim is proper."  Dedyo v. Baker Eng'r N.Y., Inc., No. 96 Civ. 7152, 1998 WL 9376, at *12

(S.D.N.Y. Jan. 13, 1998) (dismissing ADA and NYSHRL claims and stating that "a simple denial

of entitlement under a disability plan does not state a claim under the ADA.  Congress did not

intend to federalize all claims of improper withholding of disability benefits, and we decline to

adopt a rule that would compel that result.").[6]

Assuming, arguendo, that Plaintiff's claims for the denial of pension benefits could properly

be brought under the ADA, NYSHRL, and NYCHRL, such claims are without merit as follows:

### ADA Claims

A plaintiff must file a charge of discrimination with the EEOC and obtain a right to sue

letter from the EEOC before proceeding to federal district court.  See, e.g., Burrowes v. Brookdale

Hosp. & Medical Ctr., 66 Fed. Appx. 229, 231 (2d Cir. 2003).  "A district court . . . [may] only hear

claims that are either included in the EEOC charge or are based on . . . conduct which is reasonably

related to conduct alleged in the EEOC charge."  Dahbany-Miraglia v. Queensboro Cmty. Coll., No.

03 Civ. 8052, 2004 WL 1192078, at * 5 (S.D.N.Y. May 27, 2004).   Because Plaintiff did not

exhaust his administrative remedies by filing an EEOC complaint against the Defendants, his claims

under the ADA are dismissed.  See Glozman v. Retail, Wholesale & Chain Store Food Employees

Union, Local 339, 204 F. Supp. 2d 615, 629-30 (S.D.N.Y. 2002).

---

[6] The Defendants contend that the Pension Plan is not a covered entity (i.e. an appropriate
defendant) within the meaning of the ADA, NYSHRL, and NYCHRL and thus "the Pension Plan
does not fall within the jurisdiction of the ADA, of the State and City laws . . . ."  (Defendants'
Memorandum at 18.)

The <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), burden-shifting analysis "applie[s] to claims of discrimination under . . . the NYSHRL and the NYCHRL." <u>Brower v. Continental Airlines, Inc.</u>, 62 F. Supp. 2d 896, 902 (E.D.N.Y. 1999); <u>see also</u> <u>Song v. Ives Laboratories</u>, 957 F.2d 1041, 1048 (2d Cir. 1992). "The plaintiff bears the burden of making out a prima facie case [of discrimination]." <u>Smiarowski v. Philip Morris USA, Inc.</u>, No. 04 Civ. 0074, 2005 WL 1575002, at *3 (S.D.N.Y. July 5, 2005). Once the plaintiff has made out a prima facie case, "the burden then shifts to the defendant to 'articulate a legitimate, clear, specific and nondiscriminatory reason' for the employment decision." <u>Moorehead v. N.Y.C. Transit Auth.</u>, No. 02 Civ. 8038, 2005 WL 31950, at *4 (S.D.N.Y. Jan. 6, 2005) (quoting <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 64 (2d Cir. 1995)). If the defendant articulates a non-discriminatory reason, the burden shifts back to the employee who may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985).

Assuming, <u>arguendo</u>, that Plaintiff could make out <u>prima facie</u> case of discrimination under the NYSHRL and NYCHRL, Plaintiff fails to demonstrate that the elimination of the Medical Grace Period or the enactment of the July 1, 1976 Plan Document was discriminatory. That is, Defendants provide a legitimate non-discriminatory reason for the elimination of the Medical Grace Period. Defendants requested an actuarial analysis to determine the likely costs associated with reinstating a Medical Grace Period, and "[t]he findings contained in the [actuary company] report were presented to the Board of Trustees on June 6, 2001." (Ward Declaration ¶ 19.) The report indicated that a reinstatement retroactive to 1974 would cost approximately $262 million, (Defendants' 56.1 Statement ¶ 31), "and the Trustees rejected the proposed improvements due to the cost." (Ward

Declaration ¶ 19; <u>see</u> Report of the Segal Company, Exhibit O to Defendants' Memorandum); <u>see e.g.</u>, <u>Mason Tenders District Counsel v. Donaghey</u>, No. 93 Civ. 1154, 1993 WL 944580, *9 (S.D.N.Y. Nov. 19, 1993) (suggesting, in a claim for discrimination under ERISA § 510 that "the question is, have you denied them benefits on the basis of . . . <u>bona fide</u> actuarial assumptions").

Plaintiff has not demonstrated that Defendants' actions were pretextual and it is not appropriate "to second-guess business decisions or to question a corporation's means to achieve a legitimate goal." <u>Blessing v. J.P. Morgan Chase & Co.</u>, 02 Civ. 3874, 2005 WL 1844522, at * 10 (S.D.N.Y. Aug. 3, 2005) (citing <u>Dister v. Cont'l Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988)). Plaintiff "has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his [membership in a protected class]. This is not sufficient." <u>Grillo v. N.Y.C. Transit Auth.</u>, 291 F.3d 231, 235 (2d. Cir. 2002) (quotations omitted).

### 4. <u>Unjust Enrichment</u>

Defendants argue that Plaintiff's unjust enrichment claims are preempted by ERISA and that Plaintiff's argument "rests upon the premise that the participants of the Pension Plan . . . have a separate interest in the amount of employer contributions made on their behalf. This is incorrect, as the assets of the Plan are held in a general and undifferentiated pool and no participant has a right to any particular assets." (Defendants' Memorandum at 15 (citations omitted).) Plaintiff argues that "Defendants have been unjustly enriched through: a) the wrongful denial of a medical grace period; b) the improper application of Plan Rules; c) the arbitrary and capricious interpretation and administration of Plan Rules by Defendants and d) the change in vesting schedules in violation of ERISA . . . ." (Plaintiff's Memorandum at 21.)

"ERISA does not create any cause of action for unjust enrichment, and no such remedy may be implied under the common law. The creation of an extra-statutory federal common-law based remedy is rarely appropriate under ERISA." <u>Nechis v. Oxford Health Plans, Inc.</u>, 328 F. Supp. 2d

469, 480 (S.D.N.Y. 2004).  "Although courts may develop a federal common law under ERISA if appropriate, courts have uniformly held that there is no need to supplement ERISA with a common law claim of unjust enrichment because the statute already provides adequate relief for an injury such as the losses claimed by plaintiffs."  <u>Am. Med. Ass'n v. United Healthcare Corp.</u>, Nos. 00 Civ. 2800, 00 Civ. 7246, 2001 WL 863561 (S.D.N.Y. July 31, 2001); <u>Alday v. Container Corp. of Am.</u>, 906 F.2d 660, 664 (2d Cir. 1990) ("It is clear that ERISA preempts state common law causes of action relating to benefit plans, and in many respects, ERISA purposefully displaced the common law by imposing express requirements on employers and pension plans.").  See <u>Nechis</u>, 328 F. Supp. 2d at 480 ("[m]any courts have concluded that ERISA does not provide any remedy for unjust enrichment.")

### 5. <u>Class Certification</u>

Plaintiff argues that "the Defendants['] actions regarding the denial of a medical grace period has [a]ffected 22,000 Plan participants.  Class certification would permit this Court to conserve scarce judicial resources in resolving a question of law common to the prospective class."  (Plaintiff's Memorandum at 21.)  Defendants respond that "[i]t is plaintiff's burden to establish that this action is the most efficacious means of proceeding and the other mandatory considerations weigh in favor of certifying a claim . . . plaintiff has failed to address, let alone carry his burden, with respect to these consideration."  (Defendants' Memorandum at 25.)

Federal Rule of Civil Procedure 23 states, in pertinent part, that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "The plaintiffs bear the burden of satisfying the

requirements of Rule 23, Fed. R. Civ. P." <u>Spann v. AOL Time Warner, Inc.</u>, 219 F.R.D. 307, 315 (S.D.N.Y. 2003) (citing <u>Amchem Prod. Inc. v. Windsor</u>, 52 U.S. 591, 614 (1997)). "Plaintiffs are also required to prove that the class action can be maintained under one of the three categories of Rule 23(b)." <u>Id.</u>

Plaintiff fails to demonstrate that he has met the prerequisites for class certification under the Federal Rules of Civil Procedures, and he fails even to show which category of class under Rule 23(b) of the Federal Rules of Civil Procedure applies. <u>See</u> <u>Hoffman v. Empire Blue Cross and Blue Shield</u>, No. 96 Civ. 5448, 1999 WL 782518, at *12 (S.D.N.Y. Sept. 30, 1999) ("the plaintiff's present arguments for class certification provide little guidance to the Court in deciding whether the remaining ERISA claims warrant either certification of an ERISA class or retention of the state law claims.").

Moreover, because the Court is granting Defendants' motion for summary judgment and dismissing Plaintiff's claims, it need not reach the issue of whether to certify a class. <u>See</u> <u>Schweizer v. Trans Union Corp.</u>, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification was well within the discretion of the district court").

**6.**     <u>**Leave to Amend**</u>

Plaintiff opposes Defendants' request for "permission to Amend its Answer to include a statute of limitations defense," arguing that "Defendants had four opportunities to raise such a defense but failed to do so. This defense is deemed waived and would prejudice Plaintiff . . . . Discovery has long closed and was completed without any regard for this defense. Furthermore, Defendants have offered no basis to explain why this defense was not raised." (Plaintiff's Reply at 10.) Defendants respond that "Plaintiff has failed to demonstrate grounds for the Court to deny leave to amend . . . . Equally importantly, plaintiff has failed to show that he has been prejudiced by

the timing of this application, and the notice the application would be made by letter dated March 28, 2005." (Defendants' Reply at 9.)

Because the Court is granting Defendants' motion for summary judgment, it need not reach the issue of whether to permit Defendants' to amend their answer to assert a statute of limitations defense. See Cipriano v. Board of Educ. of City School Dist. of City of North, 700 F. Supp. 1199, 1213 (W.D.N.Y. 1988) ("the court need not reach the statute of limitations . . . question[ ] raised by the Union in its cross-motion for summary judgment and in its motion to amend its answer.")

## V.   Conclusion and Order

For the foregoing reasons, Plaintiff's Motion [13] is denied and Defendants' Motion [18] is granted.

The Clerk of Court is respectfully requested to close this case.

Dated: New York, New York
November 16, 2005

$RM13$

**RICHARD M. BERMAN, U.S.D.J.**

21

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/05